UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

CHARLES WOOD,

                Plaintiff,

v.

ALTON COSTAN,

                Defendant.

Civil Action No. 3:13–CV–340

### **MEMORANDUM OPINION**

THIS MATTER is before the Court on a Motion for Summary Judgment (ECF No. 8) filed by Defendant Alton Costan ("Costan"). Plaintiff Charles Wood ("Wood") has sued Costan in this matter regarding alleged violations of Wood's Eighth Amendment rights and common law battery. For the reasons stated below, the Court will GRANT IN PART Defendant's Motion.

    **I.    PROCEDURAL AND FACTUAL BACKGROUND[1]**

In his initial Complaint, Wood alleged that he was called from his cell, or other areas in the jail, to stand in front of Costan in order to be assaulted with a nightstick or other hard striking device. However, under oath, Wood now acknowledges that Costan never hit him with a stick or any other device. Pat down searches of inmates are routine when going from one building to another, when leaving or entering a pod, and when standing outside another inmate's cell due to the possibility of the presence of contraband. Further, Wood acknowledges that in each facility he has been incarcerated, pat down searches are performed essentially in the same manner. Wood claims that Costan hit him in the testicles as a part of a pat down search on three occasions. In each pat down search, Wood was facing the wall with his hands on a wall and

---

[1] Except as indicated, the following facts are not in dispute.

1

could not see Costan perform the pat down search. There was no animosity or prior dispute between Wood and Costan.[2]

The first pat down search occurred sometime in September of 2011. The pat down search was conducted in a sally port, which was subject to video surveillance. There were other deputies and inmates present for the pat down search. However, Wood cannot remember who those individuals were. The pat down that was conducted was part a routine process at the jail. The parties dispute whether Costan performed the pat down search in the same manner as he performed all other pat down searches. Wood claims that during the search, Costan hit him in the testicles and that he complained to Costan that "there's no need to do that." (Def.'s Mem. Supp. Mot. Summ. J. 3). Costan did not respond other than to tell Wood to face the wall. Wood said the impact caused "a numbness feeling, a sting in [his] testicles." (Def.'s Mem. Supp. Mot. Summ. J. 3). He stayed on his feet during the pat down. Wood did not file a grievance against Costan following the first pat down and did not complain to anyone other than Costan. Wood did not require medical attention or ask for medical attention following the first pat down search. Within the hour, Wood felt no effect from the search. Wood did not complain or tell any medical care provider that he had been struck by Costan.

The second pat down search occurred sometime in October of 2011. The pat down search was again conducted in the sally port. There were other deputies and inmates present for the pat down search, but Wood cannot remember who those individuals were. The pat down procedure was the same as the other procedures and Costan performed the search as he had on other occasions. The parties dispute whether Costan said anything out of the ordinary to Wood before the search. Wood claims that Costan hit him in the testicles during the pat down search and that his testicles stung for a couple of hours and ached for a couple of days. Again, Wood stayed on his feet during the search. Wood did not file a grievance or write a complaint after the second

---

[2] In fact, Coston does not recall Wood or the relevant searches at all. (Def.'s Mem. Supp. Mot. Summ. J. Ex. 4, at 2).

incident. Wood did not tell his medical provider that he had been struck in the testicles. Instead, Wood sought treatment for a lump he discovered in his testicles after the incident.

Wood asserts that the third incident occurred on November 29, 2011. According to Wood, the lump in his testicles was swollen and caused him pain on a daily basis. He rated the pain at an eight on a scale of ten. The third pat down occurred outside of Wood's cell, an area that was subject to video surveillance and observation. This search was routine and performed in order to ensure that there was no contraband being exchanged between inmates. The parties dispute whether this pat down was unusual. Wood states that the method used to search him— using the "karate chop" method and coming up hard to strike the testicles—was no different than how Costan performed the other searches. Wood claims that he asked Costan not to hit him in the testicles during the search like he normally did because his testicles were already in pain. In response, Costan said "whatever . . . get against the wall." (Def.'s Mem. Supp. Mot. Summ. J. Ex. 1, at 44). Costan made contact with Wood's testicles during the pat down. Although he stayed on his feet, Wood testified that the pat down hurt and that he went to his cell for a short time. Wood claims the ensuing pain lasted for a couple of days, after which he returned to his baseline pain level before the search.

Wood filed a Complaint against Costan on or about May 23, 2013 in the Circuit Court for Chesterfield County, Virginia. Wood alleges Battery (Count I), and a violation of his Eighth Amendment Rights (Count II). Pursuant to his claims, Wood requests punitive damages (Count III) and attorney's fees (Count IV). After filing an Answer, Costan removed this case from the Chesterfield Circuit Court on May 28, 2013. (ECF No. 1). Costan then filed a Motion for Summary Judgment on September 19, 2013. (ECF No. 8). Wood filed a Response on October 17, 2013. Costan filed a Reply on October 23, 2013.

    II.    **STANDARD OF REVIEW**

A motion for summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If there is no genuine dispute as to any material fact, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted). However, if the court finds that there *is* a genuine issue of material fact, the motion must be denied. 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720 (3d ed. 2011).

A court must look to the specific facts pled to determine whether a triable issue exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1996). The moving party bears the burden of establishing the nonexistence of a triable issue of fact by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325 (internal quotations omitted). "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict." *Anderson*, 477 U.S. at 252.

All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006). Thus, if the nonmoving party's evidence is only colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 at 249–50. "[A] prisoner proceeding *pro se* in an action filed under § 1983 may rely on the detailed factual allegations in his verified pleadings to withstand a motion for summary judgment supported by affidavits containing a conflicting version of the facts." *Davis v. Zahradnick,* 600 F.2d 458, 460 (4th Cir.

1979); *Carpenter v. Sheriff of Roanoke City*, No. CIVA 7:05-CV-667, 2006 WL 2709691, at *3 (W.D. Va. Sept. 20, 2006).

### III. ANALYSIS
#### A. Eighth Amendment Violation

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that "the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve,* 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* (citing *Wilson v. Seiter,* 501 U.S. 294, 298–300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams,* 77 F.3d at 761 (quoting *Hudson v. McMillian,* 503 U.S. 1, 5 (1992)). "When an inmate claims that prison officials used excessive force against his person, the objective component is less demanding and the subjective component is more demanding." *Majette v. GEO Grp., Inc.,* No. 3:07-CV-591, 2011 WL 166289, at *4 (E.D. Va. Jan. 18, 2011).

The objective component requires a demonstration that the "nature" or amount of force employed "was non-trivial" or more than a *de minimis* use of force. *Wilkins v. Gaddy,* 559 U.S. 34, 37-38 (2010); *see id* at 38 ("An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim."); *Hudson v. McMillian,* 503 U.S. 1, 9-10 (1992). The absence of injury is still relevant to the Eighth Amendment inquiry because "[t]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Wilkins,* 559 U.S. at 37 (quoting *Whitley v. Albers,* 475 U.S. 312, 321 (1986)).

The subjective component of an excessive force claim requires the plaintiff to allege facts that indicate a particular defendant "inflicted unnecessary and wanton pain and suffering." *Hudson*, 503 U.S. at 7. The question whether the measure taken inflicted unnecessary and wanton pain and suffering turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (citing *Whitley*, 475 U.S. at 320-21). In *Whitley*, the Supreme Court set out several factors which should be considered in determining whether prison officials acted maliciously and sadistically. In particular, a court should consider: (1) the need for application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. *Iko*, 535 F.3d at 239 (citing *Whitley*, 475 U.S. at 321).

1. Objective Component

Costan asserts that this case is similar to that of *Carpenter v. Sheriff of Roanoke City*, in which a court held that a plaintiff's groin injuries pursuant to a pat down search were *de minimis.* 2006 WL 2709691, at *4-5. Costan argues that, like in *Carpenter*, Wood's Eighth Amendment rights were not violated because the force used or pain inflicted during his pat down searches was minimal. Wood argues that this argument is outdated and flawed in light of *Wilkins v. Gaddy*. He avers that the correct analysis does not rely on how much pain or injury was involved.

Although not dispositive in this matter, *Carpenter* is instructive as to the nature of the harm caused by Costan's search. In *Carpenter*, a district court held that a plaintiff suffered a *de minimis* injury where the plaintiff: (1) did not seek any medical attention until the day after the incident; (2) was examined approximately thirty-six hours after the alleged incident and did not exhibit any signs of pain during palpation of his testicles, had no swelling or bruising, and did not seek any further medical attention for two more days; and (3), during subsequent exams, examiners noted, at worst, only minimal swelling, bruising, "slight edema," and some pain on

6

palpation. 2006 WL 2709691, at *4-5. Similar to the plaintiff in *Carpenter*, Wood did not seek immediate medical attention for the alleged injuries to his testicles after any of the three pat down searches by Costan. Wood alleges that none of the searches cause him pain that lasted beyond a couple of days. As in *Carpenter*, the Court finds that Wood's alleged injuries were not serious, suggesting that the force used by Costan was slight.

Additionally, Wood cannot show that Costan's use of force was "of a sort repugnant to the conscience of mankind" and not *de minimis*. *McNeair v. Gibson*, No. 5:08-CT-3107-D, 2011 WL 1467558 (E.D.N.C. Apr. 18, 2011), *aff'd,* 450 F. App'x 236 (4th Cir. 2011) (quoting *Wilkins*, 559 U.S. at 37-38). In *McNeair*, a district court held that a defendant did not use excessive force where he hit the plaintiff with a blow to the neck during a cell search and, upon examination, medical staff observed slight injury and recommended "no medical attention." *Id.* at *2. Like in *McNeair*, Costan did not use excessive force as evidenced, in part, by Wood's failure to seek immediate medical attention after any of the three searches.

In sum, Wood has not met the objective component because his injuries were slight and the use of force by Costan did not appear to be sufficiently egregious. Accordingly, the Court need not address the subjective component of the test under *Iko*. However, even if Wood met the objective component of the Eighth Amendment analysis, he would not be able to show malicious intent on the part of Costan.

    2.  <u>Subjective Component</u>

Certain factors weigh in favor of Wood. Regarding the relationship between the need and the amount of force used, the amount of force applied to Wood's testicles on at least the third search by Costan may have been unnecessary in light of the evidence. Costan and Wood's conversation prior to the third search, viewed in the light most favorable to Wood, suggests that Costan intentionally and forcefully chopped Wood's testicles despite at least some knowledge that Wood's testicles were already in pain. There is no evidence that Costan attempted to temper his search of Wood's groin area.

7

Other factors weigh heavily in favor of Costan. First, there was a legitimate need for the application of force because Costan's pat downs were necessary, routine, and necessitated some contact with Wood's groin. *See Carpenter*, 2006 WL 2709691, at \*5. Second, there is no evidence that Wood was singled out for any malicious purpose. Third, the general threat of prisoners concealing weapons or contraband constitutes a threat that requires that routine searches take place. Fourth, there is no evidence on the record that the parties had a history of animosity. *See generally Majette*, 2011 WL 166289, at \*5 (facts indicating a history of animosity). In sum, the majority of the facts and factors indicate that Costan applied force in a good-faith effort to maintain discipline and safety within the jail.

### 3. Conclusion

Wood has failed to meet his burden to show that Costan objectively used excessive force. Additionally, the majority of the evidence and *Whitley* factors weigh in favor of Costan. Even in light of the Supreme Court's increased emphasis on the justifications for use of force under *Wilkins*, Wood has failed to support his Eighth Amendment claim. The minimal extent of Wood's injuries, while not dispositive, "belie the notion that Defendant['s] . . . conduct violated the Eighth Amendment." *Id.* at \*6; *see also Whitley,* 475 U.S. at 322 ("Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury."); *Williams v. Scott,* 433 F. App'x 801, 804 (11th Cir. 2011) (concluding that plaintiff's neck injuries were of a "modest variety" that "runs counter to a finding of malicious and sadistic intent."). Accordingly, the Court will GRANT Costan's Motion for Summary Judgment as to Wood's Eighth Amendment claim.[3]

### B. Battery Claim and Qualified Immunity

---

[3] Because Wood cannot sustain his Eighth Amendment claim, the Court not need to reach the issue of qualified immunity and declines to do so.

Wood's battery claim is based on state law and premised on supplemental jurisdiction. As Wood fails to show that Costan violated his rights under federal law, only his state law claim remains. Federal jurisdiction on the basis of diversity requires complete diversity of parties and an amount in controversy in excess of $75,000. 28 U.S.C. § 1332(a). Here, both Wood and Costan are residents of Virginia and Wood has not alleged complete diversity of the parties. Thus, Wood's battery claim will be DISMISSED WITHOUT PREJUDICE for lack of jurisdiction. *See Hill v. Dillow*, No. 7:12-CV-289, 2012 WL 3629437, at *2 (W.D. Va. Aug. 21, 2012).

### IV. CONCLUSION

For the above stated reasons, the Court will GRANT IN PART the Motion for Summary Judgment as to Wood's Eighth Amendment claim. Wood's battery claim will be DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
United States District Judge

ENTERED this __19th___ day of February 2014.